IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No. 1:22-cv-00457-DDD-SKC**

REPORTHOST LLC,

       Plaintiff

v.

SPECTORA INC.,

       Defendant

---

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, DKT. 16,
FILED MAY 11, 2022**

---

I.      INTRODUCTION .................................................................................................. 1

II.     LEGAL STANDARD............................................................................................. 1

III.    FACTS RELEVANT TO THE MOTION TO DISMISS.................................... 3

IV.     ARGUMENT – Copyright...................................................................................... 4

        A.      Plaintiff's registrations are valid and invalidation is not appropriate. ................... 5

                1.      Plaintiff's works are properly classified as unpublished. ........................... 6

                2.      Defendant must follow proper procedure. ................................................. 8

        B.      *Unicolors* stands for a requirement of actual, subject knowledge of an inaccuracy,
                both in fact and law. ............................................................................................. 10

V.      ARGUMENT - CCPA ........................................................................................ 11

VI.     ARGUMENT – Injunction ................................................................................. 13

VII.    CONCLUSION.................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**                                                                                                           **Page(s)**

*Duran v. Clover Club Foods Co.*,
    616 F. Supp. 790 (D. Colo. 1985) ...................................................................................3, 11

*In re Edmonds*,
    924 F.2d 176 (10th Cir. 1991) .........................................................................................11

*Energy Intelligence Group., Inc. v. CHS McPherson Refinery, Inc.*,
    304 F. Supp. 3d 1051, 1055 (D. Kans. 2018) ...................................................................9

*Family Dollar Stores, Inc. v. United Fabrics International, Inc.*,
    896 F. Supp. 2d 223 (S.D.N.Y. 2012) ..............................................................................8

*Feist Publications, Inc. v. Rural Telephone Service. Co.*,
    499 U.S. 340 (1991) ..........................................................................................................4

*Financial Information, Inc. v. Moody's Investors Service*, *Inc.*
    599 F. Supp. 994 (SDNY 1983) ...................................................................................7, 11

*Hall v. Walter*,
    969 P.2d 224 (Colo. 1998) .................................................................................................3

*Harris Marketing Research v. Marshall Marketing & Communications*,
    948 F.2d 1518 (10th Cir. 1991) .........................................................................................4

*Hell v. Liftech Corp*,
    2021 Colo. Dist. LEXIS 254 (January 14, 2021) .............................................................12

*Jacobsen v. Deseret Book Co.*,
    287 F.3d 936 (10th Cir. 2002) ...........................................................................................2

*Koch v. Koch Industries*,
    203 F.3d 1202 (10th Cir. 2000) .......................................................................................11

*McNeese v. Access Midstream, L.P.*,
    2017 U.S. Dist. LEXIS 34538 (D. Okla. March 10, 2017) ...............................................9

*Miller v. Glanz*,
    948 F.2d 1562 (10th Cir. 1991) .........................................................................................2

*Northern Natural Gas Co. v. L.D. Drilling, Inc.*,
    No. 08-1405-WEB, 2009 U.S. Dist. LEXIS 105099 (D. Kan. Nov. 6, 2009) ..................13

*Olem Shoe Corp. v. Wash. Shoe Co.*,
    No. 09-23494-CIV (S.D. Fla. Oct. 14, 2010), ECF No. 209 ..............................................2

*Palmer/Kane LLC v. Gareth Stevens Publishing*,
No. 1:15-cv-7404-GHW, 2016 U.S. Dist. LEXIS 147336 (S.D.N.Y. Oct. 24,
2016) ........................................................................................................................2

*United States ex rel. Schwartz v. Coastal Healthcare Grp., Inc.*,
232 F.3d 902, No. 99-3105, 2000 U.S. App. LEXIS 32974 (10th Cir. Oct. 26, 2000) ..........12

*Seattlehaunts, LLC v. Thomas Family Farm, LLC*,
No. C19-1937JLR, 2020 U.S. Dist. LEXIS 60276 (W.D. Wash. Apr. 6, 2020) .................5, 6

*Structured Asset Sales, LLC v. Sheeran*,
No. 20-CV-4329 (RA), 2021 U.S. Dist. LEXIS 60826 (S.D.N.Y. Mar. 30, 2021).................2

*Sutton v. Utah State School for the Deaf & Blind*,
173 F.3d 1226 (10th Cir. 1999) ................................................................................1

*United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*,
125 F.3d 899 (5th Cir. 1997) ..................................................................................12

*Trussell v. United Underwriters, Ltd.*,
228 F. Supp. 757 (D. Colo. 1964)............................................................................12

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
142 S. Ct. 941 (2022) ..................................................................................9, 10, 11

**Statutes**

17 U.S.C. § 106(3) ................................................................................................7, 8

17 U.S.C. § 408(a) ..................................................................................................4

17 U.S.C. § 410(c) ..................................................................................................4

17 U.S.C. § 411(a) ..................................................................................................4

17 U.S.C. § 411(b) ................................................................................2, 6, 10, 11

17 U.S.C. § 411(b)(2) ........................................................................................2, 8, 9

**Other Authorities**

82 FR 47415, 47418 (2017) ......................................................................................7

84 FR 3693, 3695-96 (2019)......................................................................................6

84 FR at 3694 ..........................................................................................................7

84 FR at 3695 ........................................................................................................10

84 FR 66328, 66329 (2019)...................................................................................................11

Fed. R. Civ. Pro. 9(b).....................................................................................................3, 12

H.R. Rep. No. 94-1476 (1976)..........................................................................................7

H.R. Rep. No. 110-617, p. 20, 24 (2008)..........................................................................10

Rule 9...............................................................................................................................11

Rule 9(b)'s......................................................................................................................3, 12

## I.      INTRODUCTION

Defendant Spectora, Inc. ("Spectora") contends Plaintiff ReportHost LLC's ("ReportHost") copyright registrations are invalid, asserting the copyrighted works were published before registration.  In fact, the works registered are report templates ReportHost never published, and in bringing its motion Spectora erroneously relies on the publication of home inspection reports using the templates.  ReportHost has spent hours authoring templates containing narratives valuable to home inspectors, and has further designed an internal software platform that protects ReportHost's assets while also allowing home inspectors to produce well-written, valuable reports. ReportHost's whole templates have never been made public or licensed to other parties and have been the sole legitimate source, as interpreted by a report-building tool available on ReportHost's platform, for home inspectors desiring to design home inspection reports using ReportHost narratives.

Yet Spectora's customers have posted reports containing narratives from ReportHost's templates, Spectora itself has created copies of reports containing narratives from ReportHost's templates, and Spectora itself has hosted copies of these templates for distribution to its customers, all without compensation to or authorization from ReportHost.  ReportHost therefore has filed a First Amended Complaint (Dkt. No. 13) ("FAC"), detailing its causes of action against Spectora. Spectora has filed a Motion to Dismiss (Dkt. No. 16) ("Motion") certain of ReportHost's claims, but Spectora's arguments are deficient.

## II.     LEGAL STANDARD

In determining a motion to dismiss, the Court's "function . . . is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for*

1

*the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). The court, "after considering the complaint . . . in the light most favorable to" Plaintiff, must determine if "it appears beyond doubt [Plaintiff] can prove no set of facts in support of [plaintiff's] claim that would entitle [plaintiff] to relief." *Jacobsen*, 287 F.3d at 942. "Thus, [this Court] need only determine whether the complaint and incorporated documents are sufficient to allege" Defendant infringed Plaintiff's rights. *See id.*

ReportHost is not aware of any precedent for dismissing a copyright claim at the motion to dismiss stage under 17 U.S.C. § 411(b). *See, e.g., Structured Asset Sales, LLC v. Sheeran*, No. 20-CV-4329 (RA), 2021 U.S. Dist. LEXIS 60826 at *21 (S.D.N.Y. Mar. 30, 2021) ("Defendants point to no case in which a court invalidated a copyright registration on a motion to dismiss. The Court declines to disregard a facially valid registration prior to the development of any factual record. . ."). And Defendant's request to obtain an advisory opinion from the Register of Copyrights, even if the statutory requirements were to be met, is inappropriate at this stage. *See Palmer/Kane LLC v. Gareth Stevens Publ'g*, No. 1:15-cv-7404-GHW, 2016 U.S. Dist. LEXIS 147336, at *4 (S.D.N.Y. Oct. 24, 2016) (The Register of Copyrights "suggests that, at a minimum, the court retains the power to delay the request until a factual record has been developed, e.g., through affidavits or discovery") (quoting Response of the Register of Copyrights to Request Pursuant to 17 U.S.C. § 411(b)(2) at 11, *Olem Shoe Corp. v. Wash. Shoe Co.*, No. 09-23494-CIV, (S.D. Fla. Oct. 14, 2010), ECF No. 209)).

To succeed on a claim under the CCPA, a plaintiff must establish "(1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public

as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury." *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998). "[A]llegations of deceptive trade practices under the [CCPA] are subject to Rule 9(b)'s requirement of particularity." *Duran v. Clover Club Foods Co.*, 616 F. Supp. 790, 793 (D. Colo. 1985). Fed. R. Civ. Pro. 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

## III. FACTS RELEVANT TO THE MOTION TO DISMISS

Founded in 2002, ReportHost is a small business owned and operated by friends out of Seattle, Washington. Decl. of Scott Huston ("Huston Decl.") (Ex. A) at ¶ 2. ReportHost was founded on the premise that home inspectors, while good at home inspection, are often not as good at drafting narratives. *Id.* at ¶ 3. Identifying a need, ReportHost authored thousands of narratives for use in home inspection reports, using a fluid, informative, and smooth writing style. *Id.* at ¶ 4. ReportHost's style and content is highly recognizable and highly desired by home inspectors in the home inspection industry. *Id.* at ¶ 4, 9. ReportHost has collated these narratives into particular templates and has designed a platform for home inspectors to use in generating reports. *Id.* at ¶ 6. Understanding home inspectors are also small businesses, ReportHost charges a nominal fee for use of its platform. *Id.* at ¶ 8.

When a home inspector logs into ReportHost's platform to generate a report, the home inspector is presented with a number of different options to populate the report. *Id.* at ¶ 5, 7. These options draw from the templates stored in ReportHost's platform's back-end. *Id.* at ¶ 7. These templates are not available to home inspectors in their entirety; indeed, ReportHost guards them zealously. *Id.* at ¶ 7. Instead, the ReportHost system accesses the templates based on the home

3

inspector's request and provides options, via checkboxes, hyperlinks, and text boxes, to the home inspector, to choose what version of the template's particular narrative will populate the report. *Id*. at ¶ 7.

In 2019, ReportHost learned its templates had somehow been acquired and published for distribution in the platform of a larger competitor, Spectora. *Id*. at ¶ 11. This unlawful publication defeats ReportHost's business model and undercuts its need to keep its templates unpublished and inaccessible. *Id*. at ¶ 9, 14. When ReportHost's efforts to secure Spectora's cooperation were unsuccessful, ReportHost registered copyrights in its templates (the "Copyrighted Works"). *Id*. at ¶ 12, 14. Since then, ReportHost has been attempting to regain control over its unpublished works and recover the damages incurred due to others' infringement of its rights. *Id*. at ¶ 13.

## IV. ARGUMENT – Copyright

To sufficiently plead copyright infringement, Plaintiff must allege "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Defendant does not contest these elements, but instead challenges the validity of the *registration* of the Copyrighted Works in its Motion to Dismiss. *See* Motion at 4; *see also* 17 U.S.C. §§ 408(a), 411(a) (copyright registration is "not a condition of copyright protection" but is a precondition for filing an action for infringement). A copyright registration certificate "shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). "Evidence of [a] certificate shift[s] the burden of proof to [Defendant] to dispute the validity of the copyright." *Harris Mkt. Research v. Marshall Mktg. & Communs*, 948 F.2d 1518, 1526 (10th Cir. 1991).

Plaintiff owns a valid registration and Defendant has not met its burden to dispute the validity of Plaintiff's registration.

A.    **Plaintiff's registrations are valid and invalidation is not appropriate.**

Defendant's motion to dismiss Plaintiff's copyright claims is founded on the theory that Plaintiff published the Copyrighted Works prior to applying to register them as unpublished works. Thus, according to Defendant, the Copyrighted Works are invalid. *See* Motion at 4-5. Defendant argues, "[u]nder either of the Copyright Act's definitions of 'publication,' ReportHost's boilerplate was published" and that "ReportHost admits this." Motion at 6. ReportHost disputes this factual statement. *See* Huston Decl. at ¶ 4. While Plaintiff concedes certain portions contained within the Copyrighted Works have been licensed for use, the Copyrighted Works themselves remain unpublished.

Defendant claims "[t]he Court has the power to invalidate a copyright registration in deciding a motion to dismiss." Motion at 2 (citing *Seattlehaunts, LLC v. Thomas Family Farm, LLC*, No. C19-1937JLR, 2020 U.S. Dist. LEXIS 60276 at *5 (W.D. Wash. Apr. 6, 2020)). In *Seattlehaunts*, the Court denied the defendant's motion to dismiss, noting "in order to determine that Seattlehaunts' copyright registration is invalid on a motion to dismiss, the court would have to conclude that the well-pleaded allegations of the complaint and the limited judicially noticed facts conclusively show the following: (1) Seattlehaunts provided inaccurate information to the Registrar because the [at-issue work] is, in fact, a derivative work; (2) Seattlehaunts had knowledge that the [at-issue work] was a derivative work; and (3) the Register of Copyrights would have refused registration if Seattlehaunts had disclosed that the [at-issue work] was a derivative work." *Seattlehaunts*, 2020 U.S. Dist. LEXIS 60276, at *15. It found "[t]he court cannot make such a finding at this stage in the case." *Id*. Denying the defendant's motion to dismiss, the Court found the "arguments in favor of dismissal would require the court to weigh extrinsic evidence. Those arguments may be appropriate for summary judgment or trial, but they are not appropriate

in a motion to dismiss." *Id.* at \*17. Spectora's arguments are likewise inappropriate here.

Defendant asks this Court to weigh evidence of Plaintiff's actual and subjective knowledge. Such a determination is not appropriate absent a developed factual record. *See id.* at \*15. Regardless, the Copyrighted Works *are* properly classified as unpublished works. Defendant claims that the Copyrighted Works were published at least as early as 2019 and, because Plaintiff applied for registration of unpublished works, "invalidation is warranted under § 411(b);" Defendant asks this Court to "seek the necessary opinion from the Register of Copyrights confirming the materiality of ReportHost's application errors." *Id.* at 8, 6. Defendant is mistaken concerning the publication status of the Copyrighted Works. Defendant is mistaken concerning the appropriate process under § 411(b). And Defendant is mistaken concerning its burden relative to Plaintiff's knowledge in filing the relevant applications.

### 1.    Plaintiff's works are properly classified as unpublished.

The Compendium of the U.S. Copyright Office Practices ("Compendium") notes that, "[w]hen various parts or installments of a work are published separately, each part or installment is considered a separate work. *As a general rule*, an application should prepare a separate application, filing fee, and deposit for each part or installment of a work if those parts or installments were published separately." Compendium 1909.3 (emphasis added); *see also* 84 FR 3693, 3695-96 (2019). Applying for each installment would be unduly burdensome; Plaintiff's copyrightable narratives *alone* comprise more than 2000 different entries, totaling over $90,000 in filing fees. But Plaintiff's templates *themselves* comprise copyrighted works and *Plaintiff has never authorized their distribution to the public*. *See* FAC at ¶ 21.

Defendant posits that Plaintiff used the registration process for a group of unpublished works "to reduce the number of applications and attendant filing fees." Motion at 6; *see also*

Motion at 12 (alleging Plaintiff's use of the group registration of unpublished works was "for financial advantage"). Respectfully, this is exactly the policy behind introducing group registrations and is particularly applicable to Plaintiff, where the individual copyrightable aspects of Plaintiff's work number in the thousands. *See* Huston Decl. at ¶ 4; s*ee* 84 FR at 3694 (the "group registration option for unpublished works would be beneficial for a particular class of copyright owners: '[i]ndividual creators or small businesses who might not otherwise use the more expensive standard registration application to register their unpublished works on an individual basis'") (quoting 82 FR 47415, 47418 (2017)); *see also* H.R. Rep. No. 94-1476, at 154 (1976) ("In a number of cases the technical necessity for separate applications and fees has caused copyright owners to forego copyright altogether."); *Fin. Info., Inc. v. Moody's Inv'rs Serv.*, 599 F. Supp. 994, 1000 (S.D.N.Y. 1983) ("the court would be reluctant to hold that FII had to register each card separately . . . because it would be unduly taxing on both FII and the Copyright Office for FII to make 2,500 registrations for 2,500 index cards each year. . .").

Plaintiffs' home inspection templates have never been published. Huston Decl. at ¶ 14; FAC at ¶ 20. The only way for users to legitimately access their contents (and never as a whole) is through Plaintiff's platform. *See* FAC at ¶ 20. Plaintiff has entertained offers to sell or license the templates out in their entirety, and has consistently refused these offers. *See* Huston Decl. at ¶ 9. As a small business working in an industry with large players, and understanding that its templates are valuable to the relevant community, Plaintiff zealously guards its right to publication of its works. *See* FAC at ¶ 21; *see also* 17 U.S.C. § 106(3). The nominal licensing fee home inspectors pay to Plaintiff for access to Plaintiff's platform makes keeping the underlying templates unpublished desirable in the marketplace. *See* Huston Decl. at ¶ 8. And ReportHost's software platform involves multiple checkboxes, hyperlinks, text boxes, and choices for its

consumers to make when designing a report; these choices are not ported verbatim from the Copyrighted Works to reports created through ReportHost's platform. *Id*. at ¶ 7.

Defendant claims that Plaintiff's license for its customers to "access [] report-building software containing the templates" amounts to publication of the Copyrighted Works. Motion at 7. But ReportHost's users have no direct access to the underlying works, only to the software. *See* FAC at 20. Plaintiff is not alleging Defendant has infringed Plaintiff's copyright in its software, but in its templates. And, as Defendant concedes, Plaintiff expressly alleges *Defendant* published these copyrighted works. *See* Motion at 8; FAC at ¶ 31; *see also* 17 U.S.C. § 106(3). Plaintiff expressly alleges this publication was not authorized. *See id*.; *see also See also* 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 4.04 at 4-22 to 4-23 (2002) ("Congress could not have intended that the various legal consequences of publication under the current Act would be triggered by an unauthorized act of an infringer or other stranger to the copyright.").

Plaintiff does not know how the unpublished Copyrighted Works were taken from Plaintiff's platform. Huston Decl. at ¶ 15. The Copyrighted Works are unpublished and Defendant's motion to dismiss claims relative to them should be denied.

### 2.    Defendant must follow proper procedure.

Defendant argues that "including published materials in an application for unpublished works is 'a fundamental registration error.'" Motion at 8 (quoting *Family Dollar Stores, Inc. v. United Fabrics Int'l, Inc.*, 896 F. Supp. 2d 223, 230 (S.D.N.Y. 2012), and citing other cases). Without evidence or authority, Defendant states that, "[h]ad the Copyright Office known that *all* of the boilerplate listed in the Deposit Works was previously published, it would have refused registration." Motion at 9 (emphasis added).

To succeed on its theory of invalidity and opinion under U.S.C.S. § 411(b)(2), Defendant's

8

proper course is to first "establish" inaccurate information was provided to the Register, then show that Plaintiff had actual, subjective knowledge of the inaccuracy, and *then* to move this Court to refer the issue to the Register.  *See Energy Intelligence Grp., Inc. v. CHS McPherson Refinery, Inc.*, 304 F. Supp. 3d 1051, 1055 (D. Kans. 2018) (a "motion under § 411(b)(2)" is "a procedural mechanism that has rarely been invoked in the federal courts and never reviewed or interpreted by the Tenth Circuit" and "courts that have interpreted §422(b)(2) have determined that . . . it requires district courts to solicit the advice of the Register of Copyrights *if the statutory conditions set forth in § 411(b)(1)(A) are satisfied*.") (emphasis added); *see also McNeese v. Access Midstream, L.P.*, No. CIV-14-503-D, 2017 U.S. Dist. LEXIS 34538, at *13 n.9 (W.D. Okla. Mar. 10, 2017) ("Because the Court has found that [plaintiff] did not knowingly include false or inaccurate information in the application, the Court need not seek advice from the Register of Copyrights pursuant to 17 U.S.C. § 411(b)(2).").  Here, Plaintiff has not provided inaccurate information to the Register.

Yet Defendant still asks this court to obtain an advisory opinion from the Register of Copyrights.  *See* Motion at 2.  Defendant has not shown that Plaintiff included "inaccurate information . . . on the application for copyright registration *with the knowledge that it was inaccurate*."  *See* Section 411(b)(1) (emphasis added); *see also Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 142 S. Ct. 941, 946 (2022).  This knowledge requirement is "*actual, subjective awareness of both *the facts and the law*.*"  *Unicolors*, 142 S. Ct. 941 at 947 (emphasis added).[1]

---

[1] Plaintiff notes the High Court uses conjunctive of "both" and "and."  *Cf.* Motion at 11 (knowledge of inaccuracy "applies to *either* lack of knowledge of fact *or* law") (italics added, bold and italic in original).

When Plaintiff filed its applications to register the Copyrighted Works, it believed the Copyrighted Works were unpublished. Huston Decl. at ¶ 14. Plaintiff still believes the Copyrighted Works are unpublished. Huston Decl. at ¶ 13, 14. And Defendant has a strong legal position for maintaining the Copyrighted Works are unpublished. *See* Section IV.A.1, *infra*; Section IV.B, *supra*. Defendant's theory cannot prevail and its motion to dismiss should be denied.

**B.     *Unicolors* stands for a requirement of actual, subject knowledge of an inaccuracy, both in fact and law.**

Defendant cites to a recent Supreme Court decision for the proposition "that judicial invalidation of a copyright registration under § 411(b) should not be disregarded just because a copyright plaintiff self-servingly claims lack of knowledge of the law at the time of the application." Motion at 10 (citing *Unicolors*, 142 S. Ct. at 948). The High Court was responding to defendant's argument that "the statute will make it too easy for copyright holders, by claiming lack of knowledge, to avoid the consequences of an inaccurate application." *Unicolors*, 142 S. Ct. at 594. But the High Court noted that § 411(b)'s "purpose was to 'improve intellectual property enforcement in the United States and abroad' . . . in party by 'eliminating loopholes that might prevent enforcement of otherwise validly registered copyrights.'" *Id.* at 594 (quoting H.R. Rep. No. 110-617, p. 20, 24 (2008)).

Concerning the group publication of unpublished works, the Office has "recognize[d] that applicants may struggle with determining whether a work is published or unpublished, and this determination can be less than straightforward in many instances." 84 FR at 3695. This struggle is "especially" apparent "for works distributed online." *Id.* at 3696. In 2019, the Office "appreciate[d] that applicants have raised important questions about their challenges in applying the definition of publication, particularly in the context of works that are only made available online, and plan[ned] to issue a notice of inquiry to solicit comments . . . and ultimately to provide

10

additional guidance for applicants." *Id.*

In November 2019, the Office issued a Notice of Inquiry, "recognizing a relative lack of consensus among courts" concerning "the definition of publication in the modern context." 84 FR 66328, 66329 (2019). Explicitly, the Office "considers a work published if it is made available online and the copyright owner authorizes the end user to retain copies of that work." *Id.* at 66332. Plaintiff's Copyrighted Works are *not* available to the end user and the end user is *not* authorized to retain a copy. *Id.* at ¶ 6. The templates ReportHost consumers use are never authorized to be used without that particular back-end generation through the ReportHost platform. *Id.* at ¶ 7.

Defendant claims "ReportHost failed to get even . . . basics correct." Motion at 10. It also argues "the rule at issue is simple: was a work published or was it not?" *Id.* at 11. But the rule is not simple, and Plaintiff justifiably applied the rules, its knowledge, and the policy. *See Fin. Info.,* 599 F. Supp. at 1000; *cf.* Motion at 12. And Defendant mischaracterizes the High Court's holding, which holds § 411(b), rather than inhibiting registration, is an attempt to encourage it. *See Unicolors,* 142 S. Ct. at 594 ("Congress intended to deny infringers the ability to" use user errors in the registration process to their advantage).

Plaintiff agrees that *Unicolors* is applicable. Defendant's motion to dismiss should be denied.

## V.    ARGUMENT - CCPA

"Allegations of deceptive trade practices under the" CCPA claims must meet the heightened pleading requirements of Rule 9. *See Duran v. Clover Club Foods Co.,* 616 F. Supp. 790, 793 (D. Colo. 1985). "More specifically," the Tenth Circuit "requires a complaint alleging fraud to '[1] set forth the time, place and contents of the false representation, [2] the identity of the party making the false statements and [3] the consequences thereof.'" *Koch v. Koch Indus.,* 203

11

F.3d 1202, 1236 (10th Cir. 2000) (quoting *In re Edmonds*, 924 F.2d 176, 180 (10th Cir. 1991)), *cert. denied*, 531 U.S. 926 (2000). Rule 9(b) does not, however, "require the pleading of detailed evidentiary matter, nor does it require any particularity in connection with an averment of intent, knowledge, or condition of mind." *Trussell v. United Underwriters, Ltd.*, 228 F. Supp. 757, 774 (D. Colo. 1964). In other words, "[a]t a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud." *United States ex rel. Schwartz v. Coastal Healthcare Grp., Inc.*, 232 F.3d 902, No. 99-3105, 2000 U.S. App. LEXIS 32974, at \*3 (10th Cir. Oct. 26, 2000) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

Spectora asks this Court to require ReportHost to plead detailed evidentiary matter in its complaint beyond the requirements of Tenth Circuit precedent. Specifically, Spectora argues that ReportHost did not include facts Spectora acted "knowingly" or how Spectora's actions "significantly" impacted the public. Spectora is not only mistaken, it seems to not recognize there is no case law "which requires a plaintiff to meet the heightened pleading requirements of Rule 9(b) as to every element in the CCPA, or even the element that the deceptive trade practices impacted the public." *Hell v. Liftech Corp*, 2021 Colo. Dist. LEXIS 254, \*8 (January 14, 2021).

In accordance with Tenth Circuit precedent, ReportHost's FAC satisfies Rule 9(b)'s pleading requirements. More specifically, the FAC sets forth the time, place, and contents of the false representation, the identity of the party making the false statements, and the consequences thereof. *See* FAC, ¶¶ 124-125; *see also* FAC, ¶¶ 112-114; *see also* FAC, ¶¶ 128-129. ReportHost explicitly alleges Spectora knew of its use of ReportHost URLs and ReportHost's identifying attributes, but continued to use them anyway in the form of the "Existing Reports," which Spectora continues to host. *See* FAC ¶¶ 71, 74, 112-114 124, 127.

ReportHost's FAC pleads the facts necessary to meet the requirements under Rule 9(b). Thus, ReportHost respectfully requests this court not dismiss its CCPA claim.

## VI.    ARGUMENT – Injunction

Defendant does not advance argument relative to its request to dismiss Count VI of the FAC. Instead, it merely states "a permanent injunction is not a cause of action." Motion at 1. A valid common law cause of action may be maintained by calling on a Court's inherent equitable powers. *See, e.g., N. Nat. Gas Co. v. L.D. Drilling, Inc.*, No. 08-1405-WEB, 2009 U.S. Dist. LEXIS 105099, at *37 (D. Kan. Nov. 6, 2009) (plaintiff "asserted a common law claim for injunctive relief" and "[u]nder the facts as alleged, the court would have equitable jurisdiction to grant relief . . .").  This cause should stand.

## VII.    CONCLUSION

Plaintiff has plausibly pleaded its claims and Defendant's Motion to Dismiss should be denied.

Respectfully submitted this 1st day of June, 2022.

s/ Ethan B. Vodde
**Ethan B. Vodde**
Lee & Hayes, PC
601 W Riverside Ave, Ste 1400
Spokane, WA 99201
Telephone: (509) 944-4684
Fax: (509) 324-8979
E-mail: ethan.vodde@leehayes.com
**Attorney for Plaintiff ReportHost LLC**

I hereby certify that the foregoing brief consists of 4,000 words (including footnotes) and complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2022, I electronically filed the foregoing PLAINTIFF'S

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS with the Clerk of the Court using

the CM/ECF system which will send notification of such filing to the following email address:

auerbachb@ballardspahr.com

<div style="margin-left:40%">

s/ Ethan B. Vodde
**Ethan B. Vodde**
Lee & Hayes, PC
601 W Riverside Ave, Ste 1400
Spokane, WA 99201
Telephone: (509) 944-4684
Fax: (509) 324-8979
E-mail: ethan.vodde@leehayes.com
**Attorney for Plaintiff ReportHost LLC**

</div>

1

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No. 1:22-cv-00457-DDD-SKC**

REPORTHOST LLC,

        Plaintiff

v.

SPECTORA INC.,

        Defendant

---

**DECLARATION OF SCOTT HUSTON IN SUPPORT OF PLAINTIFF'S OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

---

I, Scott Huston, am more than eighteen years old and competent to testify, I have personal knowledge about the matters in this declaration, and those matters are true to the best of my knowledge:

1.     I am the Managing Member of ReportHost, LLC ("ReportHost"). I have served in that role since 2019 and prior to that I was a member of ReportHost, LLC.

2.     ReportHost was founded in 2002. I operate it with a friend, who is the only other member of the ReportHost. We are based in Seattle, Washington.

3.     ReportHost was founded on the belief that home inspecting reports were burdensome to home inspectors, and that home inspectors are often better home inspectors than writers.

4.     ReportHost has authored at least 2,000 narratives that are written in a style that is informative, smooth, fluid, and meant to make home inspector reports legible, attractive, and easily

read.  These narratives are not "boilerplate" but are instead refined pieces of writing.

5.      Many of these narratives include "options" as to how they may be included in reports.  For instance, these "options" may include the choices of "some" or "many" as applied to the remainder of the narrative.

6.      These narratives are compiled into templates that are stored on ReportHost's servers.   These templates are only accessible by authorized ReportHost users through the ReportHost platform in segments and are not available in their entirety to any other party, including but not limited to ReportHost's users.

7.      I designed, on behalf of ReportHost, a software platform for home inspectors to use when designing a report.  The platform will access the templates but will not provide access to the whole template to the home inspector.  Instead, it prompts the home inspector user to choose from "options" and populate a well-constructed, legible, and attractive report.  These "options" are presented through checkboxes, hyperlinks, and text boxes on the ReportHost platform.  As a result, the narratives with "options" in the templates are not ported verbatim into a home inspection report created through ReportHost's platform.

8.      ReportHost charges, for the most part, $6 per report generated through its platform.  ReportHost does have other subscription options available and attempts to make its offerings attractive to small businesses comprising home inspectors.  ReportHost believes that these fees are attractive because ReportHost's templates are not available anywhere else and home inspectors desire use of ReportHost's templates in authoring home inspection reports.

9.      ReportHost has received offers to purchase or license these templates.  ReportHost has refused every such offer.  These templates are the essence of ReportHost's competitiveness in the marketplace.  ReportHost's style is highly recognizable.

10.    ReportHost continually reviews its templates and the narratives incorporated into those templates.

11.    In 2019, I was informed by an anonymous email that ReportHost templates were being hosted on the platform offered by Spectora, Inc. ("Spectora").

12.    Not confident that the templates and ReportHost material were no longer available through the Spectora platform, I caused ReportHost to apply to register its copyrights in the templates, in their whole entireties as not available to any user or third party, in March 2020 to enable ReportHost to enforce its rights in the courts.

13.    Since registration, I have caused ReportHost to enforce its rights against users that use ReportHost's templates and their contents without ReportHost's authorization.

14.    I reviewed several copyright circulars and consulted with counsel prior to making the decision to apply to register ReportHost's copyrights.  I came to the conclusion that the templates were unpublished works.  ReportHost has no desire to publish the templates and believes them to remain unpublished, despite the unauthorized publication by the party or parties that extracted them from ReportHost's servers.

15.    ReportHost does not know how its templates were extracted from ReportHost's servers.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

EXECUTED this 1st day of June, 2022.

_____

Scott Huston